## UNITED STATES DISTRICT COURT
## DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| CAROLYN DYKES,<br>on behalf of herself and all<br>others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY<br>ASSOCIATES, LLC,<br><br>Defendant. | )<br>)<br>) No. 15-CV-00110(JCC)(MSN)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### Memorandum of Law in Support of Plaintiff's Motion for Class Certification and Appointment of Class Counsel

Respectfully submitted,

**Attorneys for Plaintiff**
Thomas R. Breeden
trb@tbreedenlaw.com
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel: (703) 361-9277
Fax: (703) 257-2259

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com
Email: jonathan@bromberglawoffice.com

# Table of Contents

Table of Authorities ........................................................ **Error! Bookmark not defined.**

Introduction and Relief Requested ............................................................. 1

Summary of Claim.................................................................................... 1

Discovery Conducted to Date and the Nature of the Class......................... 3

Argument .................................................................................................. 5

   I.   Standard of review for class certification........................................... 5

   II.   The proposed class satisfies the requirements for certification ................... 7

     A.   Numerosity is satisfied................................................................. 7

     B.   Commonality is satisfied.............................................................. 9

     C.   The claims of the representative party are typical of the claims of the class 11

     D.   The representative parties will fairly and adequately protect the interests of the class.................................................................................... 13

   III.   Rule 23(b)(3) – Class Action Maintainable.................................. 15

     A.   Predominance ......................................................................... 15

     B.   A class action is superior to other methods for the fair and efficient adjudication of the controversy ................................................... 17

   IV.   Plaintiff's attorneys meet all the criteria for appointment as class counsel under the 2003 Amendments concerning appointment of class counsel contained in Rule 23(g) ....................................................................... 19

Conclusion............................................................................................. 22

i

# Table of Authorities

Page(s)

## Cases

*In re A.H. Robins Co., Inc.*,
    880 F.2d 709 (4th Cir. 1989) ............................................................................ 5, 6

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................... 15, 19

*Bonett v. Educ. Debt Servs., Inc.*,
    No. 01-6528, 2003 WL 21658267 (E.D. Pa. May 9, 2003) .................................. 15

*In re Broadhollow Funding Corp.*,
    66 B.R. 1005 (Bankr. E.D.N.Y. 1986) ................................................................ 13

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) .................................................................... 9, 11, 13

*Carbajal v. Capital One, F.S.B.*,
    219 F.R.D. 437 (N.D. Ill. 2004) ........................................................................... 15

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ................................................................................. 20

*Central Wesleyan College v. W.R. Grace & Co.*,
    143 F.R.D. 628 (D.S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993) ........................... 10

*Clomon v. Jackson*,
    988 F.2d 1314 (2d Cir. 1993) ............................................................................... 11

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D.Cal.2014) ............................................................................ 21

*Cypress v. Newport News General & Nonsectarian Hospital Ass'n*,
    375 F.2d 648 (4th Cir. 1967) ................................................................................. 8

*D'Alauro v. GC Services Ltd. Partnership*,
    168 F.R.D. 451 (E.D.N.Y. 1996) .......................................................... 6, 11, 15, 16

*Dameron v. Sinai Hosp. of Baltimore, Inc.*,
    595 F. Supp. 1404 (D. Md. 1984) .......................................................................... 7

*Dashiell v. Van Ru Credit Corp.*,
   283 F.R.D. 319 (E.D. Virginia 2012) ....................................................... 8

*Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*,
   445 U.S. 326 (1980) .................................................................................. 18

*Eisen v. Carlisle Jacquelin*,
   417 U.S. 156 (1974) .................................................................................... 7

*Fisher v. Virginia Electric and Power Company*,
   217 F.R.D. 201 (E.D. Va. 2003) .............................................................. 11

*Gariety v. Grant Thornton, LLP*,
   368 F.3d 356 (4th Cir. 2004) .............................................................. 6, 15

*General Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982) .................................................................................. 12

*Greisz v. Household Bank, N.A.*,
   176 F.3d 1012 (7th Cir. 1999) ................................................................. 19

*Gross v. Washington Mut. Bank*,
   No. 02-CV-4135, 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) (Levy,
   Mag. J.) ..................................................................................................... 15

*Gunnells v. Healthplan Services, Inc.*,
   348 F.3d 417 (4th Cir. 2003) .............................................................. 6, 11

*Harrison v. Great Springwaters of America, Inc.*,
   1997 WL 469996 (E.D.N.Y. June 18, 1997).......................................... 10, 14

*Haynes v. Logan Furniture Mart, Inc.*,
   503 F.2d 1161 (7th Cir. 1974) ................................................................. 17

*Hertz v. Canrad Precision Industries, Inc.*,
   1970 U.S. Dist. LEXIS 13024 (S.D.N.Y. 1970)...................................... 13

*Jeffreys v. Communications Workers*,
   212 F.R.D. 320 (E.D. Va. 2003)............................................................ 6, 10

*Kelley v. Norfolk & Wester Ry. Co.*,
   584 F.2d 34 (4th Cir. 1978) ....................................................................... 7

*Liles v. Am. Corrective Counseling Servs*,
   231 F.R.D. 565 (S.D. Iowa 2005)............................................................. 15

iii

*Lozada v. Dale Baker Oldsmobile, Inc.*,
   197 F.R.D. 321 (W.D. Mich. 2000) ....................................................... 18

*Lucas v. GC Servs, L.P.*,
   226 F.R.D. 337 (N.D. Ind. 2005) .......................................................... 15

*Macarz v. Transworld Systems, Inc.*,
   193 F.R.D. 46 (D. Conn. 2000) ................................................. 6, 10, 14

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) ............................................................... 17

*Mailloux v. Arrow Financial Services, LLC*,
   204 F.R.D. 38 (E.D.N.Y. 2001) ................................................ 2, 3, 6, 15

*McCall v. Drive Fin. Servs., L.P.*,
   236 F.R.D. 246 (E.D. Pa. 2006) ........................................................... 15

*Morris v. Wachovia Securities, Inc.*,
   223 F.R.D. 284 (E.D. Va. 2004) ............................................................. 6

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ........................................................ 20, 21

*Ostrof v. State Farm Mutual Auto. Ins. Co.*,
   200 F.R.D. 521 (D. Md. 2001) .............................................................. 14

*Oxendine v. Williams*,
   509 F.2d 1405 (4th Cir. 1975) ............................................................. 13

*Petrolito v. Arrow Financial Services, LLC*,
   221 F.R.D. 303 (D. Conn. 2004) ........................................................... 16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................ 17

*Rabidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .................................................................. 7

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) ............................................................... 21

*In re Risk Mgmt. Alternatives, Inc.*,
   208 F.R.D. 493 (S.D.N.Y. 2002) ........................................................... 11

*Seeger v. AFNI, Inc.*,
   2006 WL 2290763 (E.D. Wis. Aug. 9, 2006) ........................................... 6

iv

*In re Southeast Hotel Properties Ltd. P'ship Investor Litig.,*
　　151 F.R.D. 597 (W.D.N.C. 1993) ........................................................... 14

*Talbott v. GC Svs., Ltd.,*
　　191 F.R.D. 99 (W.D. Va. 2000) ............................................................... 7

*Tedrow v. Cowles,*
　　No. 06-cv-637, 2007 WL 2688276 (S.D. Ohio Sept. 12, 2007) ............................. 15

*Tyrell v. Robert Kaye & Assocs., P.A.,*
　　223 F.R.D. 686 (S.D. Fla. 2004) ............................................................ 15

*In re Visa Check/Mastermoney Antitrust Litig.,*
　　280 F.3d 124 (2d Cir. 2001) .................................................................. 7

*Wiseman v. First Citizens Bank & Trust Co.,*
　　212 F.R.D. 482 (W.D.N.C. 2003) .......................................................... 13

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* .............................*passim*

**Other Authorities**

Margolies, Dan, "Jury Awards KC Woman $83 Million in Debt
　　Collection Case," All Things Considered, KCUR Radio ......................................... 4

Fed. R. Civ. P. 23 ...................................................................................*passim*

2 H. Newberg, *Newberg on Class Actions* ( 4th Ed. 2002) ........................................ 19

v

## Introduction and Relief Requested

Plaintiff, Carolyn Dykes ("Plaintiff" or "Dykes"), filed this class-action lawsuit against Portfolio Recovery Associates, LLC ("PRA" or "Defendant") on January 28, 2015, for its attempts to collect money from Virginia consumers in violation of the Fair Debt Collection Practices Act ("FDCPA").[1] On April 21, 2015, Plaintiff amended her complaint as of right.[2]

Plaintiff now moves for an order certifying a class, defined as follows:

> All consumers with Virginia addresses, who: (a) within one year of January 28, 2015 (b) were sent a debt collection letter in Spanish by Defendant PRA in a form materially identical or substantially similar to the letter attached to Plaintiff's Complaint as <u>Exhibit A</u>; and (c) the letter was not returned by the postal service as undelivered.

## Summary of Claim

PRA allegedly purchased a debt in the amount of $3,886.67 that arose from Plaintiff's consumer credit card issued by non-party Capital One Bank (USA), N.A.[3] In the course of attempting to collect on this alleged debt, PRA sent Plaintiff three forms of collection letters, also known as "dunning" letters, in Spanish: the first, on

---

[1] Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Note: Because PRA has marked *all* relevant documents – even class-size numbers and templates of collection letters sent to thousands of consumers – as "Confidential," Plaintiff is forced to move to seal this memorandum and all other documents filed in connection with this motion. After filing, Plaintiff plans on conferring with PRA's attorneys, and then moving to unseal almost all of the documents being filed in connection with this motion.

[2] *See* ECF# 16.

[3] Am. Compl. (ECF# 16) at ¶¶ 7, 10.

January 29, 2014,[4] the second, on May 1, 2014,[5] and the third, on November 12, 2014.[6] Each letter was written almost entirely in Spanish.[7] PRA's logo, positioned at the top-center of each letter, was in English and read: "Portfolio Recovery Associates, LLC: We're giving debt collection a good name."[8] Plaintiff does not speak or read Spanish.[9] Plaintiff never requested that any communications be made in Spanish.[10]

The following language appeared in bold at the bottom of the first collection letter: "Esta carta proviene de una agencia de cobranza y su intencion es cobrar una deuda. Cualquiera informacion que se obtenga sera utilizada para ese proposito."[11] This translates in English to: "This letter comes from a collection agency and its intention is to collect a debt. Any information that is obtained will be used for that purpose."[12] The second and third letters contained slightly different bolded language that, as this Court observed in an earlier decision, conveyed the same message.[13]

In the amended complaint, Plaintiff alleged that PRA's collection letters were false, deceptive, or misleading in violation of sections 1692e and 1692e(11) of the

---

[4] *See* Exhibit A to the accompanying Declaration of Carolyn Dykes (the "Dykes Decl"), dated November 30, 2015; also available at ECF# 16-1.

[5] *Id.*, Exhibit B; also available at ECF# 16-2.

[6] *Id.* Exhibit C; also available at ECF# 16-3.

[7] *Id.* at Exhibits A, B, and C.

[8] *Id.*

[9] Dykes Decl at ¶ 5 & 6.

[10] *Id.* at ¶ 5.

[11] *Id.* at Exhibit A.

[12] *Id.* at Exhibit A.

[13] *Dykes v. Portfolio recovery Associates, LLC*, No. 15-CV-110, ___ F.Supp.3d ___,

FDCPA, mainly because they are written almost entirely in Spanish and do not give the required notices in English.[14] Plaintiff is seeking statutory damages for herself and the proposed class.

## Discovery Conducted to Date and the Nature of the Class

During the course of discovery, PRA created a chart that it authenticated during its 30(b)(6) depositions in which it revealed that Exhibits A, B, and C were sent to 3,030 individuals in Virginia during the class period.[15] In the same chart, PRA revealed that it used a fourth and fifth version of its Spanish-language letters – Exhibits D and E to Ms. Dykes' accompanying declaration – that were sent to many of the same 3,030 individuals who were sent Exhibits A, B, and C.[16] In addition, Exhibits D and E were sent to another 300 individuals, but not to Ms. Dykes.[17] Like the three letters that were sent to Ms. Dykes, Exhibits D and E were written entirely in Spanish – other than in the logo section – made various settlement offers to the recipients, and contained language similar to the FDCPA statutory warnings contained in Exhibits A-C.[18] Thus, there are no material differences between the five letters.

During discovery, Plaintiff also learned why she had been targeted with Spanish-language-only communications. PRA's collection notes – and the

---

2015 WL 3965885 (E.D. Virginia June 30, 2015), at *1, n. 1.
[14] Am. Compl. (ECF# 16) at ¶¶ 20–21, 29, 32.
[15] *See* Exhibit A to the accompanying Declaration of Brian L. Bromberg (the "Bromberg Decl"), dated December 1, 2015.
[16] *Id.*
[17] *Id.*
[18] *See* Exhibits D and E to Dykes Decl.

depositions taken of PRA's representatives based on those notes – show that PRA apparently began communicating with Ms. Dykes solely in Spanish because PRA tried to reach her at a wrong number that it found through the skip-tracing arm of LexisNexis.[19] PRA's collection notes show that even though PRA soon learned it was trying to reach Ms. Dykes at a wrong number – and struck the number from its database –PRA nevertheless continued trying to communicate with her solely in Spanish.[20] (PRA's blind reliance on LexisNexis is troubling given that in its advertising materials, LexisNexis disclaims the reliability of the results of its skip-tracing[21] and that PRA has just suffered an $83 million jury verdict in Missouri state court for relentlessly hounding the wrong person for a debt based on an inaccurate LexisNexis skip trace.[22])

Apparently, PRA did not have any procedures in place to cross-check and make certain that when a telephone "line collector" switched the binary flag from default of English to the secondary language of Spanish, a mistake wasn't being

---

[19] *See* the collection notes attached as <u>Exhibit B</u> to the Bromberg Decl.; *see also*, and Privette Deposition at 12-17; 42-50; 52-56. This relatively short deposition transcript is attached in full as <u>Exhibit C</u> to the Bromberg Decl.

[20] *Id.*

[21] *See* material from LexisNexis, attached as <u>Exhibit D</u> to Bromberg Decl, advertising its skip-tracing services, while simultaneously disclaiming all reliability.

[22] *See* Margolies, Dan, "Jury Awards KC Woman $83 Million in Debt Collection Case," "All Things Considered, KCUR Radio, available at http://kcur.org/post/jury-awards-kc-woman-83-million-debt-collection-case#stream/0, and a printout of which is attached as <u>Exhibit E</u> to the Bromberg Decl.; Plaintiff's attorneys have also recently obtained a copy of the trial transcript from the Kansas City case, which PRA has by now obtained from its Missouri attorneys and which Plaintiff's attorneys can make available to the Court.

4

made.[23] But even more important to this motion, PRA's 30(b)(6) witnesses testified that they have no way of identifying with any certainty which, of the 3,330 class members, allegedly requested that communications be made solely in Spanish.[24] In other words, PRA has advised Plaintiff that its primary defense to this motion will be that it cannot "ascertain" which of the 3,330 consumers speak Spanish. But PRA has it backwards: at the very least, the notices required under the FDCPA must be given in English or in the alternative, the burden is on PRA to show which class members, if any, requested that communications be made solely in Spanish.

To avoid class certification, PRA must show that its defense – that thousands of consumers wanted to receive communications solely in Spanish – is something more than mere speculation, but PRA's own company witnesses have testified that they cannot point with any certainty to which class members allegedly wished to receive Spanish-only communications and why. In the absence of anything more than the most speculative of defenses, Plaintiff asks that this Court certify the class.

**Argument**

I.   **Standard of review for class certification**

The district court has "wide discretion in deciding whether or not to certify a proposed class."[25] The general policy in the Fourth Circuit is "to give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in

---

[23] *See* Privette Dep at 18-39; 55-62.

[24] *See* Guevera Dep, generally; Privette Dep at 65-69.

[25] *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728-29 (4th Cir. 1989) (internal

5

application which will in the particular case 'best serve the ends of justice for the affected parties and … promote judicial efficiency.'"[26] Congress recognized the importance of class actions in protecting consumers from debt collectors by expressly authorizing class action remedies under the FDCPA.[27] Consequently, district courts throughout the nation have certified numerous FDCPA cases for class action treatment.[28]

Under Federal Rule of Civil Procedure 23, a class should be certified when the plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b).[29] Upon satisfaction of these requirements, the court must then find that questions of law or fact that are common to the class members predominate over questions that affect any individual member.[30]

---

quotation marks omitted).

[26] *Id.* at 740 (internal quotations marks omitted). *See also Jeffreys v. Communications Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *Morris v. Wachovia Securities, Inc.*, 223 F.R.D. 284, 291 (E.D. Va. 2004).

[27] 15 U.S.C. §§ 1692k(a) and (b). Unlike other federal consumer protection statutes like the FCRA and TCPA, Congress has placed importance on class actions brought under the FDCPA by explicitly allowing them.

[28] *See, e.g., Seeger v. AFNI, Inc.*, 2006 WL 2290763 (E.D. Wis. Aug. 9, 2006) (class certified where each plaintiff received a debt collection letter from AFNI, which specified an additional collection fee of approximately 15% of the original debt); *Mailloux v. Arrow Financial Services, LLC*, 204 F.R.D. 38 (E.D.N.Y. 2001) (statewide FDCPA class certified regarding form collection letters); *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46 (D. Conn. 2000); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996) (class certified regarding harassing and abusive debt collection letters).

[29] Fed. R. Civ. P. 23; *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 423 (4th Cir. 2003); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004).

[30] *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

## II.   The proposed class satisfies the requirements for certification

Under Federal Rule of Civil Procedure 23, a class should be certified when the plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b).[31]  Because Plaintiff meets the requirements of numerosity, commonality, typicality, and adequacy, and because the common questions predominate over any individual questions and a class action is superior to other methods to adjudicate the controversy, the proposed classes should be certified.[32] Moreover, Plaintiff's attorneys meet the requirements to be appointed class counsel under Rule 23(g).[33]

### A.   Numerosity is satisfied

The first requirement of Rule 23(a) is that the class members be so numerous that joinder is not practicable.[34] "Impracticability" in this context does not mean impossibility of joinder."[35] There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied.[36] In the Fourth Circuit, "[a] class consisting of as few as 25 to 30 members raises the presumption

---

[31] Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 132 (2d Cir. 2001).

[32] Fed. R. Civ. P. 23(a) and (b)(3).

[33] Fed. R. Civ. P. 23(g).

[34] Fed. R. Civ. P. 23(a)(1); *Talbott v. GC Svs., Ltd.*, 191 F.R.D. 99, 102 (W.D. Va. 2000).

[35] *Rabidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

[36] *Kelley v. Norfolk & Wester Ry. Co.*, 584 F.2d 34 (4th Cir. 1978); *see also Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1407-08 (D. Md. 1984) (stating that "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical").

that joinder would be impractical."[37] In fact, the Fourth Circuit has certified classes as small as 18 members.[38]

Here, PRA has prepared a table showing that 3,030 individuals were sent letters substantially similar to three letters sent to Ms. Dykes – Exhibits A-C – and that including the fourth and fifth letters – Exhibits D and E – would raise the number of class members to 3,330. With so many class members, PRA cannot possibly argue that a showing of numerosity has not been met.

Nevertheless, PRA has advised that it plans on claiming that Ms. Dykes does not have standing to represent the additional 300 individuals who were sent Exhibits D and E, but not Exhibits A-C. But the relevant inquiry is not whether PRA used the same fill-in-the-blanks mail-merge letter when communicating with Ms. Dykes and the 300 individuals who were sent Exhibits D and E. The relevant inquiry is whether Exhibits D and E suffered from plausible legal infirmities substantially similar or materially identical to the problems found with Exhibits A-C. The importance of this inquiry is reflected in the Fed.R.Civ.P. 23(a) requirement that there must be "questions of law or fact common to the class . . . ."

The importance of this inquiry is further reflected in a decision by the Honorable Anthony J. Trenga, in *Dashiell v. Van Ru Credit Corp.*,[39] holding that the recipient of only one of four collection letters used by a debt collector could represent recipients of all four letters because "the four letters Plaintiff has

---

[37] *Id.*

[38] *See Cypress v. Newport News General & Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967).

attached to her motion are not sufficiently different such that they 'would require the plaintiffs to advance different theories about why each is [in violation of the FDCPA].'" Judge Trenga further observed that "While the differences in the letters may ultimately prove to be material, the Court conditionally finds at this stage that these four letters raise common questions of law under the FDCPA." Judge Trenga went on to "conditionally conclude[] . . . that the claims or defenses of Plaintiff are typical of the claims or defenses of all persons who received one of the four letters, or another letter, sent by the Defendant, containing substantially similar language to the four letters . . . ."

Here, similarly, the key question – which cuts across all five letters – is whether providing notices, required by statute, solely in Spanish violates the FDCPA. Because Congress required these notices to be included in every collection letter sent by PRA, it will be hard for Defendant to claim that there are any material differences between <u>Exhibits A-C</u> and <u>Exhibits D and E</u>. Accordingly, Plaintiff submits that the class size should be 3,330, which is undoubtedly sufficiently numerous.

## B. Commonality is satisfied

Federal Rule of Civil Procedure 23(a)(2) requires that there be either a common question of law or fact; that is, "typicality and commonality requirements of the Federal Rules ensure that only those parties who can advance the same

---

[39] *Dashiell v. Van Ru Credit Corp.*, 283 F.R.D. 319 (E.D. Virginia 2012).

factual and legal arguments may be grouped together as a class."[40] There must be at least one question of law or fact that is common to the class, and so long as there is at least one issue in common to all class members, a class should be certified.[41]

Thus, courts have found common questions of law or fact sufficient to certify a class in cases where FDCPA plaintiffs have been sent similar debt collection notices or "form" letters.[42]  Here, the class claims stem from the exact same alleged conduct. The class is composed of those individuals to whom PRA sent letters almost entirely in Spanish and with the notices required to be in English appearing in Spanish, instead. Whether that conduct is actionable under the FDCPA, is a common question applicable to all class members. "Courts have previously found common questions of law and fact where FDCPA plaintiffs alleged the receipt of the same or similar collection letter as the basis of the lawsuit."[43]

The only issue is the identification of the consumers who were sent the letters. This question is readily answerable from Defendant's own files and does not present an obstacle to class certification.

Finally, there are no issues of reliance or causation. The FDCPA is violated if

---

[40] *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997)).

[41] *Jeffreys v. Communications Workers of America*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993) (stating that commonality "does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist").

[42] *Harrison v. Great Springwaters of America, Inc.*, 1997 WL 469996, at *3 (E.D.N.Y. June 18, 1997) (citing *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996)).

[43] *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46 (D. Conn. 2000) (statewide

the "least sophisticated consumer" would be misled by the Defendants' conduct.[44]

Under these circumstances, where there are no individual determinations that

overwhelm the common question, the commonality element is met.[45]

## C. The claims of the representative party are typical of the claims of the class

According to the Fourth Circuit, "the premise of the typicality requirement is

simply stated: as goes the claim of the named plaintiff, so go the claims of the

class.[46] Typicality is met when class representatives show that: (1) "their interests

are squarely aligned with the interests of the class members"; and (2) "their claims

arise from the same events or course of conduct and are premised on the same legal

theories as the claims of the class members."[47]

In other words, "when the same unlawful conduct was directed at both the

named plaintiff and the class to be represented, the typicality requirement is

usually met irrespective of varying fact patterns which underlie individual

claims."[48] The purpose of this requirement is to "ensure[] that maintenance of a

class action is economical and [that] the named plaintiff's claims and the class

claims are so interrelated that the interest of the class members will be fairly and

---

FDCPA class certified regarding form collection letters)

[44] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

[45] *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).

[46] *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998).

[47] *Fisher v. Virginia Electric and Power Company*, 217 F.R.D. 201, 212 (E.D. Va. 2003) (citations omitted).

[48] *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).

adequately protected in their absence."[49]

Here, the claims of the class representative are based on a pattern of allegedly unlawful conduct substantially similar to the acts underlying the claims of the proposed class members. Stripped to its essentials, the claims of both the class representative and the proposed class members rest upon allegations that they were sent substantially similar letters by PRA and that those letters violated the FDCPA by failing to give required notices in English. In support of this claim, Plaintiff will offer two alternative legal theories. First, Plaintiff will argue that PRA did not have the right to send its collection letters in Spanish without, at the very least, including English-language translations of the required notices. Second, and in the alternative, Plaintiff will argue that PRA can choose to send letters solely in Spanish, but only if it can show that the class members asked for communications to be made solely in Spanish.

Importantly, the fact that a consumer might have understood the Spanish-language disclosure is not a defense under either of Plaintiff's alternative theories. Under the first theory, the FDCPA always requires the English-language disclosure as a failsafe, while, under the second theory, the failure to include an English-language disclosure, coupled with PRA's seemingly random method of deciding who should get the Spanish-language letters, is *itself* the misleading and unfair practice that violates the FDCPA. Plaintiff can make either argument on behalf of all class members, thus satisfying the requirement "that the interest of the class members

---

[49] *In re Risk Mgmt. Alternatives, Inc.,* 208 F.R.D. 493, 505 (S.D.N.Y. 2002) (citations

will be adequately protected in their absence."[50] Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied.

### D. The representative parties will fairly and adequately protect the interests of the class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." That protection is evaluated based on two factors: (a) the plaintiff's attorney must be "qualified, experienced, and generally able to conduct the litigation;" and (b) the class members' interests must not be "antagonistic to each other."[51] In a class action, due process dictates that the named plaintiffs possess undivided loyalty to those class members who are absent.[52]

Generally, there is a presumption of competence for all members of the bar in good standing unless evidence to the contrary is adduced.[53] The ability to "protect the interests of the class depends in part on the quality of counsel."[54] Here, Plaintiff has retained counsel with substantial experience litigating claims of this type both in class actions and in individual suits.[55] Attorney Bromberg has considerable experience representing plaintiffs in class actions and in handling matters under

---

omitted).

[50] *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

[51] *Wiseman v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482, 488-89 (W.D.N.C. 2003).

[52] *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998).

[53] *Hertz v. Canrad Precision Industries, Inc.*, 1970 U.S. Dist. LEXIS 13024, *3 (S.D.N.Y. 1970); *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1012 (Bankr. E.D.N.Y. 1986).

[54] *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (citations omitted).

[55] *See* accompanying Declarations of Attorneys Brian L. Bromberg and Thomas R. Breeden (the "Bromberg Decl." and the "Breeden Decl."

the FDCPA.[56] He has served as class counsel in numerous certified class actions, including adjudicated cases brought in federal court under the FDCPA. Attorney Breeden has considerable experience representing individual FDPCA litigants and some experience serving as class counsel.[57] Accordingly, Breeden and Bromberg should be appointed as class counsel under Rule 23(g).

As to the named plaintiff, "[a] number of courts that have considered . . . FDCPA class actions challenging form collection letters have found named plaintiffs who received versions of the challenged collection letters to be adequate class representatives for purposes of Rule 23(a)(4)."[58] Representation is "adequate" if the class representatives are not disqualified because of interests that are antagonistic to the reminder of the class.[59] Further, the burden lies on the Defendant to prove that representation is inadequate.[60] Here, Plaintiff's accompanying declaration indicates that she has no known conflicts with any of the class members and demonstrates in detail how she has been actively involved in the prosecution of this action.[61] Given the identical claims of Plaintiff and the class members, Plaintiff is an adequate representative of the class.

---

[56] *See* Bromberg Decl.

[57] *See* Breeden Decl.

[58] *Harrison,* 1997 WL 469996 at *3, 1997 U.S. Dist. LEXIS 23267, at *17 (citing *Colbert v. Trans Union Corp.,* 1995 U.S. Dist. LEXIS 578 (E.D. Pa. Jan. 12, 1995)); *see also Macarz,* 193 F.R.D. at 51-54 (plaintiff who received collection letter found adequate).

[59] *Ostrof v. State Farm Mutual Auto. Ins. Co.,* 200 F.R.D. 521, 530 (D. Md. 2001).

[60] *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.,* 151 F.R.D. 597, 606-7 (W.D.N.C. 1993);

[61] *See* accompanying Declaration of Carolyn Dykes, dated November 30, 2015.

## III.   Rule 23(b)(3) – Class Action Maintainable

Once the Court has concluded that the four prerequisites for class action

certification have been met, it must decide whether the class action is maintainable

under Rule 23(b)(3), which provides "that the questions of law or fact common to the

members of the class predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fair and

efficient adjudication of the controversy."

### A.  Predominance

Substantial authority supports certification of FDCPA class actions under

subsection (b)(3).[62] Rule 23(b)(3) "[p]redominance is a test readily met in certain

cases alleging consumer or securities fraud ...."[63]  Furthermore, "it has been

recognized…that 'common questions of law and fact surrounding the contents and

mailing of [standardized form collection] letters predominate over individual

issues.'"[64] The requirement of predominance tests whether proposed classes are

---

[62] *See, e.g., Tedrow v. Cowles*, No. 06-cv-637, 2007 WL 2688276 (S.D. Ohio Sept. 12, 2007) (certifying (b)(3) class in action under the FDCPA); *Ayzelman*, 238 F.R.D. 358 (same); *Bourlas*, 237 F.R.D. 345 (same); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 253-54 (E.D. Pa. 2006) (finding Rule 23(b)(3) applicable for class certification in FDCPA case involving collection letters); *Reade-Alvarez*, 237 F.R.D. at 31 (same); *Gross v. Washington Mut. Bank*, No. 02-CV-4135, 2006 WL 318814, at *3 (E.D.N.Y. Feb. 9, 2006) (Levy, Mag. J.) (same); *Lucas v. GC Servs, L.P.*, 226 F.R.D. 337 (N.D. Ind. 2005) (same); *Liles v. Am. Corrective Counseling Servs*, 231 F.R.D. 565 (S.D. Iowa 2005) (same); *Tyrell v. Robert Kaye & Assocs., P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004); *Carbajal v. Capital One, F.S.B.*, 219 F.R.D. 437 (N.D. Ill. 2004) (same); *Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *4 (E.D. Pa. May 9, 2003) (same); *Mailloux*, 204 F.R.D. at 42-43 (same); *D'Alauro*, 168 F.R.D. at 458-59 (same).

[63] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citations omitted).

[64] *See Mailloux*, 204 F.R.D. at 43 (*quoting Harrison*, 1997 WL 469996, at *9

cohesive enough to warrant adjudication by representation.[65] When there is an essential common factual link between all the members of a class and the Defendant, for which the law provides a remedy, predominance is satisfied.[66]

The common question here involves the legality of PRA's practice of sending letters to consumers entirely in Spanish without even translating the notices required by statute into English. Whether PRA's letters violate the FDCPA is the common question that predominates over any others.

Damages under the FDCPA are formulaic: any actual damages sustained, and such additional damages, not to exceed $1,000, as the court may allow. While there is no minimum individual recovery, the total amount of statutory damages awarded cannot exceed the lesser of $500,000 or 1% of the net worth of the debt collector.[67] The only "non-common" question is how many class members were sent the Spanish-language-only letters. But this "non-common" question has already been answered by PRA, and the common questions regarding liability predominate over the readily answered questions that apply to individual class members.[68]

---

(additional citation omitted)).

[65] *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004) (citations omitted).

[66] *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996).

[67] 15 U.S.C. § 1692k(a).

[68] *Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303, 310 (D. Conn. 2004) ("[T]he FDCPA allow[s] certification without regard to actual damages. Court[s] have 'routinely ... conclude[ed] ... that the need for individualized proof of damages alone will not defeat class certification.' The Second Circuit has recognized that there are a variety of ways for a district court to deal with individualized damages issues that may arise in the course of litigation.  Moreover, since the violation alleged here – the 'core' of the damages suffered – is the illegal debt collection attempt, whether or not the plaintiff paid and suffered actual damages does not

16

## B. A class action is superior to other methods for the fair and efficient adjudication of the controversy

Rule 23(b)(3) lists factors "pertinent" to the finding that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, which include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability or concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.[69]

Allowing this case to proceed as a class action would be an efficient means of resolving the claims at issue, where there exist 3,330 proposed class members and each member possesses a claim based on form collection letters sent by PRA in violation of the FDCPA. Moreover, aggregating these claims based on the form collection letters helps the poor or the uninformed to enforce their rights, especially in a case where multiple lawsuits would not be justifiable for each individual plaintiff because of the small amount of money they would potentially seek.[70] Even though the FDCPA allows for individual statutory-damage recoveries of up to $1,000, as the Seventh Circuit has noted, "this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to

---

affect his typicality as a class representative.") (internal citations omitted).

[69] Fed. R. Civ. P. 23(b)(3).

[70] *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1664 (7th Cir. 1974); *see also* Advisory Committee Note to 1996 Amendment to Rule 23.

find an attorney willing to take her case."[71]

The core purpose of class-action procedure is to give individual plaintiffs a vehicle to pool claims that they would otherwise not litigate on an individual basis.[72] A consumer may be economically discouraged from seeking relief in an individual action because of the high risk that potential recovery would be exceeded by the sheer cost of litigation.[73] Class certification thus allows the Court to manage a large number of small and medium-sized claims where the high costs of discovery and trial could easily prevent any adjudication of those claims and preclude relief to the class members.[74]

Here, the amounts of the claims are very small, and it is unlikely that the class members have much interest in individually controlling the prosecution of the action. Therefore, it would be very desirable to concentrate the litigation in this forum.

The final factor in considering superiority is whether there would be difficulty managing the class.[75] The class is not large, and the attorneys' experience in suits of this kind speaks to their ability to manage the classes. To the extent that this is considered a management difficulty, "[i]t should be kept in mind that management difficulties, as with other superiority factors, must be judged in comparison to the fairness and efficiency of other available methods for adjudicating

---

[71] *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

[72] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

[73] *See Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

[74] *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 332-33 (W.D. Mich. 2000).

18

the controversy. Because [ascertainment of class members is] unique to class actions, any management difficulties in connection with class notice must be viewed not in isolation, but rather from the perspective of whether such [superiority problems] negate the advantages of unitary adjudication from a class action."[76]

The only real alternative to a class action here is for there to be no adjudication of these claims whatsoever. Therefore, a class action is not only the superior means of adjudication, but practically, it is the only means.

### IV. Plaintiff's attorneys meet all the criteria for appointment as class counsel under the 2003 Amendments concerning appointment of class counsel contained in Rule 23(g)

Under Rule 23(g), the Court must consider the following in appointing class counsel:

(i) the work counsel has done in identifying or investigating potential claims in the action,

(ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

(iii) counsel's knowledge of the applicable law, and

(iv) the resources counsel will commit to representing the class.[77]

These requirements are similar to those employed in determining whether counsel is adequate under Rule 23(a)(4).[78] Therefore, the standards developed by that case

---

[75] Fed. R. Civ. P. 23(b)(3)(D).

[76] 2 H. Newberg, *Newberg on Class Actions* ( 4th Ed. 2002), § 4:35 (discussing difficulties in notifying the class members as a potential management difficulty).

[77] Fed. R. Civ. P. 23(g)(1)(C)(i).

[78] *Amchem*, 521 U.S. at 626 n.20 ("The adequacy heading also factors in competency and conflicts of class counsel."). *See, e.g.*, *Greisz v. Household Bank, N.A.*, 176 F.3d 1012, 1013 (7th Cir. 1999) (Rule 23(a)(4) requires assessment of competence of

law have been incorporated almost in their entirety into new Rule 23(g), and the discussion of Plaintiff's counsel's qualifications set forth above satisfies many of the "new" Rule 23(g) requirements.

In addition, here, Plaintiff's counsel carefully investigated potential claims in this action. This investigation included reviewing the collection letter for potential claims and researching the questions of liability that the letter raised. And in drafting the complaint, counsel conducted research on Westlaw and in the leading FDCPA treatise published by the National Consumer Law Center. Plaintiff's counsel has also diligently pursued all discovery avenues in this case and has kept abreast of the various cases previously and now pending against Defendant.

## V.   The proposed class is ascertainable

Finally, Plaintiff anticipates that PRA is going to claim that the proposed class is not "ascertainable" because some of the 3,330 individuals to whom the five letters were sent may speak Spanish or may prefer communications in Spanish. It would not be an exaggeration to describe "ascertainability" as the "flavor of the month" for class-action defense attorneys. Ever since 2013, when the Third Circuit, in *Carrera v. Bayer Corp.*,[79] adopted a "heightened ascertainability" standard, defense attorneys have been claiming that no class action can pass muster. But *Carrera* is not binding on this Court and the decision has already attracted strong criticism, most notably from the Seventh Circuit, which declined, in *Mullins v.*

---

counsel for class).
[79] *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013).

*Direct Digital , LLC*,[80] to follow *Carrera* because it "goes much further than the established meaning of ascertainability and in our view misreads Rule 23."[81]

The view – that Rule 23 does not impose a "heightened ascertainability" requirement that a plaintiff prove at certification that there is a reliable and administratively feasible way to identify class members – is rapidly gaining acceptance from both circuit and district courts throughout the county.[82] The traditional view, enunciated by the Seventh Circuit, is that "[a] court must consider 'the likely difficulties in managing a class action,' but in doing so it must balance countervailing interests to decide whether a class action 'is superior to other available methods for fairly and efficiently adjudicating the controversy.'"[83]

Here, there is no difficulty identifying the 3,330 individuals who were sent the offending letters. To avoid class certification, PRA must show that its defense that thousands of Spanish speakers wanted to receive communications solely in Spanish is something more than mere speculation, but PRA's own company witnesses have testified that they cannot point with any certainty to which class members allegedly wished to receive Spanish-only communications and why. Apparently, PRA did not have any procedures in place to cross-check and make certain that when a telephone "line collector" switched the computer "flag" from the default of English to the secondary language of Spanish, a mistake wasn't being

---

[80] *Mullins v. Direct Digital , LLC*, 795 F.3d 654 (7th Cir. 2015).
[81] *Id.* at 662.
[82] *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D.Cal.2014).
[83] *Mullins*, 795 F.3d at 658, citing Fed.R.Civ.P. 23(b)(3).

made. But even more important to this motion, PRA's 30(b)(6) witnesses testified that they have no way of identifying with any certainty which, of the 3,330 class members, allegedly requested that communications be made solely in Spanish. In other words, PRA has advised Plaintiff that its primary defense to this motion will be that it cannot "ascertain" which of the 3,330 consumers speak Spanish. But PRA has it backwards: at the very least, the notices required under the FDCPA must be given in English or in the alternative, the burden is on PRA to show which class members, if any, requested that communications be made solely in Spanish. Because PRA cannot make out this alleged defense for even one class member, its argument must fail. In short, the fact that PRA has no way of ascertaining which of the consumers who received required Spanish-language disclosures actually speak Spanish is not a defense – to the contrary, it is the violation itself!

### Conclusion

For the reasons set forth herein, Plaintiff respectfully request that this action be certified as a class action under Fed. R. Civ. P. 23.

Dated: December 2, 2015

PLAINTIFF, CAROLYN DYKES,
Individually And On Behalf Of The Class,

By:  /s/ Brian L. Bromberg
 Brian L. Bromberg

**Attorneys for Plaintiff**
Thomas R. Breeden
trb@tbreedenlaw.com
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel: (703) 361-9277
Fax: (703) 257-2259

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com
Email: jonathan@bromberglawoffice.com

23

## Certificate of Service

I hereby certify that on this December 1, 2015, a copy of the foregoing Memorandum of Law in Support of Motion for Certification of the Class was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: December 2, 2015

/s/Thomas R. Breeden
Thomas R. Breeden

24