IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| CAROLYN DYKES, ) | |
| on behalf of herself and all ) | |
| others similarly situated, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:15cv110 (JCC/MSN) |
| ) | |
| PORTFOLIO RECOVERY ASSOCIATES, ) | |
| LLC ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Carolyn Dykes' ("Plaintiff") Motion for Class Certification and Appointment of Class Council. [Dkt. 44] For the following reasons, the Court denies Plaintiffs' Motion for Class Certification and Appointment of Class Council.

**I. Background**

Plaintiff filed the instant action alleging violations of the Fair Debt Collection Practices Act ("FDCPA") by Defendant Portfolio Recovery Associates ("PRA"). Specifically, Plaintiff claims that PRA violated the FDCPA by sending her debt collection notices in Spanish rather than English. Plaintiff never indicated she preferred to receive correspondence in Spanish and she does not speak or understand Spanish. The

1

Plaintiff now seeks class certification for the class defined as follows:

> All consumers with Virginia addresses, who: (a) within one year of January 28, 2015 (b) were sent a debt collection letter in Spanish by Defendant PRA in a form materially identical or substantially similar to the letter attached to Plaintiff's Complaint as *Exhibit A*; and (c) the letter was not returned by the postal service as undelivered.

(Pl.'s Mem. in Supp. [Dkt. 45] at 1.) Discovery has revealed that PRA sent the three letters received by Plaintiff to 3,030 individuals in Virginia during the class period. (Id. at 3.) PRA also sent copies of two allegedly similar letters to another 300 individuals in Virginia during the class period. (Id.) Discovery also revealed that PRA began corresponding with Plaintiff in Spanish after receiving a response in Spanish from a phone call to a number which a LexisNexis skip-tracing search indicated was connected with Plaintiff. (Id. at 4.) Plaintiff alleges that PRA soon realized that this number was not connected with Plaintiff and struck it from its register, but continued to correspond with Plaintiff in Spanish. Each of the three Spanish letters sent to Plaintiff contains language which, when translated, notifies the reader that "[t]his letter comes from a collection agency and its intention is to collect a debt. Any information that is obtained will be used for that purpose." (Am. Compl. ¶¶ 12, 13, 16.) In denying a previous motion to dismiss in this case, the Court noted that "[t]here is no

2

allegation . . . that the substance of the Spanish collection letters contained false statements or information; quite simply, they were just written in Spanish, a language [Plaintiff] could not read." (Mem. Op. at 5.) The Motion for Class Certification and Appointment of Class Council has been fully briefed, oral argument was heard on January 21, 2016, and the motion is now ripe for decision.

## II. Standard of Review

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2550 (2011). "The district court must perform a rigorous analysis to ensure that a class certification is appropriate" before certifying a class. *Soutter v. Equifax Info Servs.*, 498 F.App'x 260, 264 (4th Cir. 2012). The Fourth Circuit has "stressed in case after case that it is *not the defendant* who bears the burden of showing that the proposed class *does not comply* with Rule 23, but that it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006)(emphases in original). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law

3

or fact, etc." *Dukes*, 131 S.Ct. at 2551. The class certification inquiry frequently involves analysis that "overlap[s] with the merits of the plaintiff's underlying claim." *Id.* "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *General Telephone Co. of Southwest v. Falcon*, 102 S.Ct. 2364, 2372 (1982).

In order to be certified, "a proposed class must satisfy Rule 23(a) and one of the three sub-parts of Rule 23(b)." *Thorn,* 445 F.3d at 318 (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Rule 23(a) requires "numerosity of parties, commonality of factual or legal issues, typicality of claims and defenses of class representatives, and adequacy of representation." *Id.* In proving commonality, the party seeking class certification must show that a certified class would have "the capacity . . . to generate answers" that "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S.Ct. at 2551. If the resolution of the claim "turns on a consideration of the individual circumstances of each class member," then commonality is not satisfied. *Thorn*, 445 F.3d at 319. The four requirements of Rule 23(a) are threshold requirements, each of which must be satisfied in order to

4

proceed as a class action. *Amchem Prods. v. Windsor*, 117 S.Ct. 2231, 2245 (1997).

Additionally, "Rule 23 contains an implicit requirement that the members of a proposed class be readily identifiable." *EQT Prod.*, 764 F.3d at 358. This is sometimes referred to as the "ascertainability" requirement. *Id.* In order to satisfy this requirement, "the plaintiff must demonstrate that class members will be identifiable without extensive and individualized fact-finding or mini-trials[.]" *Soutter v. Equifax Information Services, LLC*, 307 F.R.D. 183, 196 (E.D.Va 2015)(internal quotation marks omitted). Ascertainability is a threshold requirement which must be satisfied in order to proceed as a class action. *EQT Prod.*, 764 F.3d at 358.

"Rule 23(b)(3) has two components: predominance and superiority." *Id.* at 319. Predominance requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004)(internal quotation marks omitted). This predominance standard is "even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S.

5

591, 623-24 (1997)). Superiority requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). "The predominance inquiry focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." *EQT Prod.* 764 F. 3d at 358. Where the court must engage in "substantial and individualized inquiries for each class member," the predominance requirement is not satisfied. *Paulino v. Dollar General Corp.*, 2014 WL 1875326, at *6 (N.D. W. Va. May 9, 2014)(citing *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 353).

### III. Analysis

Plaintiff argues that each of the four requirements of Rule 23(a) and both the predominance and superiority requirements of Rule 23(b)(3) have been met for her proposed class. (Pl.'s Mem. in Supp. at 7). As a threshold matter, PRA challenges the validity of the Plaintiff's proposed class definition as "untethered from her FDCPA claim, which hinges on the putative class members' Spanish literacy." (Def.'s Mem. in Opp. at 7.) PRA also challenges the validity of what it believes would be the properly defined class as failing to satisfy ascertainability, commonality, typicality, and numerosity. (*Id.* at 14-22.) Finally, PRA denies that Plaintiff

6

has demonstrated predominance and superiority as required by Rule 23(b). (*Id.* at 22-25.) The Court agrees with the Defendant that the class described by Plaintiff in her memorandum in support is both incorrectly defined and lacking commonality. The Court also finds that even were the class properly defined, it would be fatally deficient with respect to ascertainability and numerosity.

    1. <u>Relationship of the Proposed Class to the Claim</u>

"The definition of the class is an essential prerequisite to maintaining a class action." *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976). Courts have refused to certify a class "if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *See also*, *Pagan v. Dubois*, 884 F.Supp. 25, 28 (D.Mass. 1995)(denying certification to a class comprising all Latino prisoners as "clearly overbroad" when "only those Latino prisoners who cannot communicate effectively in English" were allegedly harmed). The class proposed in Plaintiff's Memorandum in Support of her Motion for Class Certification includes recipients of PRA's Spanish-language dunning letters who actually speak Spanish and indicated to PRA that they primarily speak Spanish or indicated that they would like to receive correspondence in Spanish. Because the Court

7

finds that those individuals have suffered no violation of the FDCPA, Plaintiff's proposed class definition is overbroad.

Plaintiff mischaracterizes the nature of her claim when she describes "the key question" as "whether providing notices, required by statute, solely in Spanish violates the FDCPA." (Pl.'s Mem. in Supp. at 9.) This omits the issue of why PRA is providing the notices in Spanish. A previous memorandum opinion by this Court denying Defendant's Motion to Dismiss noted that "[t]here is no allegation . . . that the substance of the Spanish collection letters contained false statements or information; quite simply, they were just written in Spanish, a language [Plaintiff] could not read." (Mem. Op. at 5.)

Courts have repeatedly held that notices in Spanish are not *per se* violations of the FDCPA. *See, e.g. Reed v. Southwest Credit Sys., LP,* 2013 U.S. Dist. WL 1966973, at *4 (S.D. Tex. May 10, 2013)(holding that a Spanish language paragraph giving recipient a phone number to call if they spoke Spanish rather than English did not violate the FDCPA because "[t]here is no evidence . . . that a Spanish-speaking debtor who received a letter similar to the April 28 letter and who called the phone number would not be given notice in Spanish that complied fully" with the FDCPA); *Molina v. Healthcare Revenue Recovery Group, LLC,* 2012 U.S. Dist. WL 3067883, at *3 (M.D.

8

Fla. July 27, 2012)(again holding that a Spanish language paragraph in an English letter was not misleading to an English speaker where the letter otherwise complied with the FDCPA). The Plaintiffs in both *Reed* and *Molina*, like the plaintiff here, relied on a decision from the Eastern District of New York in the case of *Ehrich v. I.C. System, Inc.*, 681, F.Supp.2d 265, (E.D.N.Y. 2010) holding that the presence of a paragraph in Spanish on an otherwise English-language letter could mislead a *Spanish speaking* consumer if the Spanish paragraph was deficient under the FDCPA and overshadowed the notice provided by the letter. *Id.* at 273-274. *Ehrich* does not stand for the proposition that all FDCPA disclosures must be made in English all the time. Rather, the Eastern District of New York held in *Ehrich* that where a dunning letter includes writing in Spanish, that writing must comport with the requirements of the FDCPA. *Id.* While *Reed*, *Molina,* and *Ehrich* all dealt with a single Spanish paragraph in an otherwise predominantly English letter, they each support this Court's previous assertion that "[t]he plain statutory language of 15 U.S.C. § 1692e(11) does not require English-only disclosures." (Mem. Op. at 9.) The decision in *Reed* suggests, and this court agrees, that where the recipient of dunning letters indicates that she primarily speaks Spanish or requests Spanish language disclosures, Spanish-language disclosures can satisfy the FDCPA's requirements.

9

Plaintiff argues that the use of LexisNexis's skip-tracing service to secure the number which led to PRA's mistaken belief that Plaintiff spoke Spanish was unreasonable in light of the dubious reliability of the skip-tracing service. (Pl.'s Mem. in Supp. at 4.) Plaintiff may be right in this regard, but the reliability of the skip-tracing service is irrelevant to the proper definition of the class in this case. Plaintiff's cause of action stems from the unsolicited receipt of dunning letters in a language she does not speak. The Plaintiff has not provided, and the Court cannot find, any case where a federal court has found the use of skip-tracing services violates the FDCPA. The crux of Plaintiff's case is not that PRA violated the FDCPA by using a skip-tracing service, but that PRA violated the FDCPA by sending her a dunning letter written entirely in Spanish without any prior indication by Plaintiff that she primarily spoke Spanish.

There is no allegation in this case that the Spanish letters failed to contain the required "mini-miranda" warnings in Spanish, or that the Spanish letters "could objectively affect the least sophisticated [Spanish-speaking] consumer's decisionmaking." *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126-27 (4th Cir. 2015). No violation is alleged for the recipients of PRA's Spanish-language dunning letters who indicated that they primarily speak Spanish or indicated that

they would like to receive correspondence in Spanish. Any proper definition of the class would have to be limited to individuals who received the Spanish-language dunning letters without first indicating that they primarily speak Spanish or that they would like to receive correspondence in Spanish. Because it is facially apparent that Plaintiff's proposed class contains many individuals who did not suffer harm at the hands of the Defendant, the Court declines to certify her proposed class.

### 2. Commonality

The class as proposed by the Plaintiff also runs into fatal problems with the commonality requirement of Rule 23(a). Commonality requires that a proposed class action have "the capacity . . . to generate answers" that "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S.Ct. at 2551. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* If the resolution of the claim "turns on a consideration of the individual circumstances of each class member," then commonality is not satisfied. *Thorn*, 445 F.3d at 319. "A point of commonality must be specific – and relevant – enough that it could help form the basis for the success of an individual claim." *Soutter*, 307 F.R.D. at 200.

11

In the case at hand, not all of the 3,330 proposed class members have a valid claim for violations of the FDCPA. Only those class members who received the Spanish-language letters without first indicating that they primarily spoke Spanish or wished to receive communications in Spanish have a valid claim. The validity of the FDCPA claim, then, turns not on the receipt of the letters, but on the "individual circumstances of each class member" surrounding receipt of the letters. *Thorn*, 445 F.3d at 319. Because the validity of the FDCPA claims of the proposed class members hinges on the individual circumstances under which they received the Spanish language letters rather than the sole common characteristic of having received a Spanish-language dunning letter from PRA, the proposed class fails to satisfy Rule 23(a)'s requirement of commonality. The Court therefore denies Plaintiff's motion to certify her proposed class on the basis of commonality as well.

3. Ascertainability

Even if Plaintiff had properly defined a class consisting only of those who received dunning letters in Spanish without indicating that Spanish was their primary language or otherwise requesting communications in Spanish during the class period, her Motion for Class Certification would be denied. While this class would consist only of those who actually

suffered the complained of wrong, it suffers from fatal deficiencies with respect to ascertainability.

In spite of Plaintiff's assertions to the contrary, the burden is on the plaintiff to "demonstrate that class members will be identifiable without extensive and individualized fact-finding or mini-trials[.]" *Soutter* 307 F.R.D. at 196 (internal quotation marks omitted); *see also Thorn,* 445 F.3d at 321 ("it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23" (emphasis in original)). Here, Plaintiff has not offered any method at all for determining which of the 3,330 recipients of the Spanish-language letters received them without first indicating that they primarily spoke Spanish or that they would like to receive correspondence in Spanish. Plaintiff acknowledges that PRA claims to "have no way of identifying with any certainty which, of the 3,330 class members, allegedly requested that communications be made solely in Spanish." (Pl.'s Mem. in Supp. at 5. (*citing* Privette Dep. [Dkt. 55-10] at 65-69)) The deposition testimony of PRA's corporate designee indicates that there is no readily available way to determine if an account was coded as Spanish speaking in PRA's system due to a request by the consumer or without the consumer's consent. PRA's corporate designee described the procedure to determine

the events surrounding a particular account being flagged as Spanish speaking thusly:

> So I would start by looking at all of these accounts that are flagged as Spanish and then I would have to go into the account and try to identify when the flag was added. IT could identify if they were added at the time of the pool load but I would need to go through the account notes to figure out when the flag was added if it was added by the collector
> Once I found out it was added by a collector, I then would need to see if we had any call recording associated with that conversation that caused the flag to be changed. I would then have to go to – have those call recordings pulled for me and then I would have to listen to those call recordings, assuming they all were there and existed, and then for me I would need a translator to tell me what they were saying if they were speaking Spanish, and then I would make a determination.

(Privette Dep. 66:11-67:1.) The corporate designee went on to explain that PRA's trained agents are not required to document the specific reason for flagging the consumer's account, often making it impossible to discover the specific reason why an account was flagged as Spanish speaking by simply reviewing PRA's records. There is no way to know which of the 3,330 recipients of the Spanish-language letters received the letters without first giving a valid indication that they primarily spoke Spanish or preferred to receive communications in Spanish without engaging in a detailed review and analysis of the individual context of each of the 3,330 recipients' accounts. This detailed review and analysis would entail "extensive and

individualized fact-finding or mini-trials." *Soutter* 307 F.R.D. at 196 (internal quotation marks omitted).

Plaintiff has not demonstrated that there would be a reliable or administratively feasible mechanism for determining which of the 3,330 Spanish-language letter recipients received a letter without a prior indication that they primarily spoke Spanish or wished to receive their correspondence in Spanish. Accordingly, the Court finds that Plaintiff has not demonstrated that the class is ascertainable.

### 4. Numerosity

If the class were properly defined as the 3,330 individuals who received Spanish-language letters from PRA, numerosity would clearly be met. As discussed above, however, that class definition is not appropriate in this case. Because the Plaintiff has not made any showing suggesting how many of the 3,330 letter recipients received the letter without first indicating that they spoke Spanish or would like to receive communications in Spanish, the Court has no way to determine whether the properly defined class satisfies the requirement of numerosity. It is difficult to imagine a scenario in which a plaintiff would fail to demonstrate that a class is ascertainable yet would somehow manage to satisfy numerosity. In any event, this Plaintiff has not demonstrated that the

requirement of numerosity is satisfied with regards to the properly defined class in this case.

    5. <u>Typicality</u>

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)(quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998), *cert. denied*, 118 S.Ct. 2312 (1998)). As discussed above, only those individuals who received the Spanish-language letters without first giving some indication that they primarily spoke Spanish or requested communications in Spanish have a potentially valid claim against PRA. Because each of the five letters is substantially similar in that they admittedly meet the FDCPA's requirements in Spanish but contain no English, the Court finds that as goes the Plaintiff's claim, so would go the claim of each class member with a valid claim. Therefore Plaintiff's claim is typical of the claims of the class members.

    6. <u>Adequacy of Representation</u>

In order to satisfy the requirement of adequacy of representation, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 97 S.Ct. 1891, 1896 (1997)(quoting *Schlesinger v.*

*Reservists Comm. to Stop the War*, 94 S.C.t 2925, 2930 (1974)). Defendant does not contest that the Plaintiff here adequately represents the proposed class. Plaintiff, an English speaking individual who received dunning letters in Spanish without requesting communication in that language, is a member of the class however it is defined. Plaintiff's interest and injury are the same as those of other class members with valid claims. Accordingly, the Court finds that Plaintiff has satisfied the requirement of adequacy of representation.

### IV. Conclusion

The class as proposed by Plaintiff is too loosely defined and is deficient with respect to the requirement of commonality. Further, the Plaintiff has failed to show that the properly defined class is reasonably ascertainable or that it satisfies the requirement of numerosity. Accordingly, the Court denies the Plaintiffs' Motion for Class Certification and Appointment of Class Council.

An appropriate order will issue.

/s/

January 28, 2016
Alexandria, Virginia

James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE